UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Fredrick Dewayne Hines, | Case No. 16-cv-3797 (DSD/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michelle Smith, Tammy Wherley, David Reishus, Shar Mike, Sherilinda Wheeler, Unknown Magadanz, and Dan Meyer, | |
| Defendants. | |

This matter is before the Court on the Motion to Dismiss of Defendants Smith, Wherley, Reishus, Wheeler, Magadanz, Meyer, and Mike, (ECF No. 151), and Plaintiff Fredrick Dewayne Hines' Motion for Leave to File an Amended Complaint According to Rule 15(a)(2), (ECF No. 164). This action was referred for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.2(b). For the reasons stated below, this Court recommends that Defendants' motion to dismiss be granted and Hines' motion for leave to amend be denied.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

Hines is a prisoner confined in the Minnesota Correctional Facility in Oak Park Heights, Minnesota ("MCF-OPH"). (Compl. ¶ 3, ECF No. 1). He asserts that the Minnesota Department of Corrections (the "DOC") pretextually transferred him from the Minnesota Correctional Facility in Stillwater to MCF-OPH under the guise of "bed

space" concerns, (Compl. ¶¶ 11, 13), when, in fact, the true reason for the transfer was retaliatory for filing federal lawsuits,[1] (*see* Compl. ¶¶ 11, 41, 105).

Hines further alleges inmates assigned to cells near him are located there to intimidate or kill him. (*See* Compl. ¶¶ 18–27, 31, 38, 42, 51, 56, 58, 60, 62–63, 77, 80, 134, 136–37). Hines claims he informed various MCF-OPH employees about threats on his life, but no action was taken. (Compl. ¶¶ 29–30, 39, 45, 48–49, 55–56, 92, 121, 131–32). Instead, Hines asserts that MCF-OPH employees took further action that endangered his life, such as trying to move him to various areas within MCF-OPH and conspiring with each other and with other inmates to kill him in retaliation for a previous lawsuit. (Compl. ¶¶ 31, 34, 37–39, 41–42, 56–57, 60, 63, 65, 68, 106, 108, 141, 147). As a result, Hines alleges that Defendants deliberately were indifferent to his safety in violation of the Eighth Amendment. (Compl. ¶¶ 151–57). Hines seeks (1) declaratory judgment; (2) an injunction ordering him to be transferred to one of three specific facilities, and that Defendants and other DOC employees be prohibited from harassing him, filing false reports, opening his mail, and retaliating against him; and (3) compensatory and punitive damages. (Compl. at 32–34).

In response to an earlier motion to dismiss, Hines moved to amend his complaint to add allegations—and additional defendants—that defendants conspired to confiscate his legal documents, interfered with his ability to pursue his federal claim, and raped him.

---

[1] Specifically, Hines refers to a federal lawsuit where some of the claims Hines makes in this lawsuit were dismissed without prejudice. (Compl. ¶¶ 15, 30, 68); *see Hines v. Roy*, Case No. 16-cv-352 (DSD/SER), 2016 WL 7163589 (D. Minn. Nov. 11, 2016), *adopted by* 2016 WL 7155738 (Dec. 7, 2016).

(*See* ECF Nos. 68, 80, 97). The Court granted Hines' motion to amend his complaint and directed Hines to file an amended complaint within thirty days. *Hines v. Smith*, Case No. 16-cv-3797, 2017 WL 5593526, at *6 (D. Minn. Oct. 23, 2017), *adopted by* 2017 WL 5564556 (Nov. 17, 2017). In permitting the amendment, the Court advised Hines that failure to file an amended complaint within the requisite time period would result in dismissal of his case without prejudice for lack of prosecution. *Hines*, 2017 WL 5593526, at *6; 2017 WL 5564556, at *1. Hines was granted two extensions, moving the original deadline for his amended complaint from December 18, 2017 to April 13, 2018. (*See* ECF Nos. 116, 120).

As of April 26, 2018, Hines had not filed an amended complaint, so this Court recommended that Hines' original complaint be dismissed without prejudice to allow him the opportunity to "file a new complaint in a new case when he is ready to do so." (ECF No. 139, at 5). Hines objected to the recommendation, arguing that Defendants confiscated his amended complaint and requested that his initial complaint be allowed to serve as the operative complaint. (ECF Nos. 140, 142). The Court found Hines' argument concerning confiscation "not credible in light of the numerous memoranda, motions, and letters that Hines has successfully submitted to the court." (ECF No. 144, at 3). The Court did, however, permit Hines to move forward based on his initial complaint "[i]n the interests of justice and to prevent further delay in adjudicating the merits of Hines's claims." (ECF No. 144, at 3).

3

Defendants thereafter moved to dismiss the initial complaint on the grounds that Hines' claims are barred for various reasons and for failure to state a claim. (ECF Nos. 151, 152). Hines again sought to amend his complaint in response. (ECF No. 164).

## II. MOTION TO DISMISS

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (courts "assume all facts in the complaint to be true, and draw all reasonable inferences in favor of the non-moving party"). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

4

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Notwithstanding the liberal construction afforded *pro se* complaints, a plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). *Pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

Hines brings suit under Section 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The "purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "Public servants may be sued under section 1983 either in their

official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)).

### B. Jurisdictional and Statutory Limits to Hines' Requests for Relief

"[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." *Greenwalt v. Indiana Dept. of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) (noting that injunctive and equitable relief are not available in § 1983 individual-capacity suits). As such, Hines may not seek injunctive relief against Defendants in their individual capacities.

Section 1983 permits claims against "every person" who deprives a citizen of their Constitutional or legal rights. For purposes of Section 1983 claims, the state is not a person, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Furthermore, courts treat suits against state officials in their official capacity as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Suit against a state or its agencies is barred by the Eleventh Amendment absent Minnesota's consent to filing of such a suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *see*, *e.g., P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145–46 (1993) (Eleventh Amendment bars suits for injunctive relief against states and their agencies); *Monroe v. Arkansas State Univ.*, 495

F.3d 591, 594 (8th Cir. 2007) ("While under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies.") (citations omitted); *see also Benter v. Iowa Dept. of Transp.*, 221 Fed. Appx. 471, 471 (8th Cir. 2007) (per curiam). Hines therefore may not seek monetary damages against Defendants in their official capacities; Hines may only seek monetary damages against Defendants in their individual capacities.

To the extent Hines requests damages for emotional suffering,[2] it is barred. The Prison Litigation Reform Act ("PLRA") bars inmates from pursuing federal civil claims "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Here, Hines' complaint relates to a retaliatory transfer to another prison facility, putting him in danger of imminent harm such that his Eighth Amendment rights were violated. Without physical injury, Hines cannot seek redress for mental or emotional injuries. *See Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012).

Hines also seeks an injunction that would require the DOC to move him to a facility of his choice. Under the PLRA, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). Before

---

[2] Hines requests compensatory damages for "failure to protect against sufficiently imminent dangers, as well as unnecessary and wanton infliction of pain and suffering., with evil intent due to invidious discrimination." (Compl., at 34).

7

granting any relief, the court must find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* The court must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.* The Supreme Court has noted that "internal security" is "perhaps the most legitimate of penological goals." *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003). Thus, prisoners have no choice of cell placement, transfer within a prison, or transfer to another prison as such decisions fall within the discretion of prison officials. *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984). Therefore, Hines likely cannot be granted the injunction he seeks.

Thus, while Hines is limited in what relief he may seek, these limitations do not fully dispose of his claims.

### C. Hines Fails to State an Eighth Amendment Claim

"To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). "The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind.'" *Irving*, 519 F.3d at 446 (quoting *Farmer*, 511 U.S. at 834). Eighth Amendment cases are analyzed in light of the specific claim raised. *Irving*, 519 F.3d at 446.

8

A claim that guards and prisoners formed a conspiracy to murder a prisoner is a prison conditions case. *Id.*; *Arnold v. Groose*, 109 F.3d 1292, 1298 (8th Cir. 1997). Thus, the objective component of a prison conditions claim requires that Hines first show he was incarcerated under conditions posing a substantial risk of serious harm. *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (quoting *Farmer*, 511 U.S. at 834); *Irving*, 519 F.3d at 446–47. The subjective inquiry is "whether the prison officials were deliberately indifferent to a serious risk of harm to the inmate." *Irving*, 519 F.3d at 446 (citing *Farmer*, 511 U.S. at 834, and *Arnold*, 109 F.3d at 1298). This requires that Hines prove prison officials "both knew of and disregarded an excessive risk to inmate health or safety." *Holden*, 663 F.3d at 341 (quoting *Farmer*, 511 U.S. at 837).

Prisons, by their very nature, involve uncomfortable conditions. *See Irving*, 519 F.3d at 446 ("Routine discomfort is a part of the penalty that criminal offenders must pay."). "[O]nly extreme conditions that deprive inmates of a 'civilized measure of life's necessities' violate the Eighth Amendment." *Irving*, 519 F.3d at 446 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Holden*, 663 F.3d at 340–41. Nevertheless, an Eighth Amendment claim brought by a prisoner requires an actual injury. *Sisney*, 674 F.3d at 843; *Jones v. Shields*, 207 F.3d 491, 494–95 (8th Cir. 2000); *King v. Dingle*, 702 F. Supp. 2d 1049, 1074 (D. Minn. 2010); 42 U.S.C. § 1997e(e).

No actual injury has been pleaded in this case. Rather, Hines' entire complaint can be summarized as follows: Hines asserts he is at imminent risk of being killed by white supremacist co-prisoners that are placed near his cell, that MCF-OPH prison officials

9

conspired to place white supremacist prisoners near Hines' cell, that MCF-OPH administration ignored his pleas for assistance, and that MCF-OPH prison officials want to murder Hines because he filed a federal lawsuit. Hines' complaint includes a rotating set of white supremacists that are involved in the plot on his life; no matter where those prisoners are moved within MCF-OPH, Hines alleges the replacement is likewise involved in seeking to murder Hines. This is the full extent Hines' claim. There is not a single instance where Hines alleges any actual injury. All Hines alleges is that he does not feel safe as an imprisoned sex offender. The closest Hines gets to alleging any sort of indifference to his wellbeing is that a nurse skipped Hines' cell during a wellness check on September 30, 2016. (Compl. ¶ 127). Hines does not allege he needed any medical assistance at the time, nor that the skipped wellness check resulted in any injury whatsoever. (Compl. ¶ 127).

  Simply put, Hines has pleaded no factual allegations beyond the speculative level that he is incarcerated under conditions posing a serious risk of harm. As stated earlier, Hines asserts that a vast network of prison guards and their inmate surrogates have a conspiratorial plot against his life, but, unfortunately, Hines' complaint sounds in conspiracy theory rather than plausible fact. Hines has spun standard prison operations into a web of danger, with him at the center. Hines alleges no facts indicating he faces any greater risk of violence than his fellow inmates. No facts concerning a history of violence towards Hines are alleged. Rather, he relies upon his fears and speculations borne therefrom. Hines has not plausibly alleged any deliberate indifference on Defendants' part towards Hines' safety. While Hines' pleading certainly shows he is

under mental distress, there is no plausible allegation tying this to Defendants' actions, let alone actions that constitute an Eighth Amendment violation.

In later, supplemental filings, Hines asserted he was transferred to MCF-OPH as part of a conspiracy to cover-up his rape by "all white guards who were (gay) and these defendants then orchestrated Hines' rape by several inmates on all three shifts." (ECF No. 158-1, at 14). In support, Hines attaches lab reports which he asserts are "bio reference lab results, showing no sexually transmitted diseases." (ECF No. 158-1, at 13). These lab results, however, are merely blood tests conducted on Hines' diabetes. (ECF No. 158-1, at 20–25) (testing A1C levels). Another filing asserts that MCF-OPH "swapped out" his "rare" blood because it "match[es] Prince['s] blood." (ECF No. 159, at 2). Hines asserts he now has hepatitis because "someone urinated in [his] mouth while [he] was unconscious." (ECF No. 159, at 2). These added factual assertions need not be analyzed deeply for they fail the plausibility hurdle. This Court cannot draw a reasonable inference from Hines' late-submissions that Defendants committed an Eighth Amendment violation, even looking at everything in the light most favorable to Hines.

Therefore, this Court concludes Hines' complain fails to state a claim and should be dismissed.[3]

---

[3] Because Hines' complaint fails to state a claim regardless of which defendant the claim is directed at, this Court need not address Defendants' arguments that Hines has failed to sufficiently demarcate the links between a particular defendant, an act committed by that defendant, and a claim for liability. (ECF No. 152, at 9–15).

### III. MOTION TO AMEND

A court should "freely give leave" to amend a pleading before trial when "justice so requires." Fed. R. Civ. P. 15(a). Nonetheless, leave to amend should not be given when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Like before, Hines moved to amend his complaint in response to Defendants' motion to dismiss. Hines' proposed amendments add defendants that were discussed in the factual portion of his allegations, as well as clarify the names of persons previously unidentified. (*See* ECF No. 164). The amendments do not change any factual allegations. Because the proposed amended complaint adds no new factual allegations, it is futile for the reasons discussed above. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.") (internal quotation marks omitted).

In further response to Defendants' opposition to Hines' motion to amend, Hines submitted an amended complaint, (ECF No. 170), that he yet again asserts was deliberately removed by MCF-OPH staff from his mailings, (ECF No. 169). The amended complaint contains several factual additions, including a shakedown of a neighboring prison cell for a shank. These new allegations mirror allegations in the initial

12

complaint, however, mainly that whoever MCF-OPH places near Hines in prison, that prisoner intends to kill Hines. Just like the previous allegations, however, Hines again alleges no injury as a result of any of Defendants' actions.[4] As such, the later-filed amended complaint is futile for all the reasons discussed above.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** as follows:

1. Motion to Dismiss of Defendants Smith, Wherley, Reishus, Wheeler, Magadanz, Meyer, and Mike, (ECF No. 151), be **GRANTED**.

2. Plaintiff Fredrick Dewayne Hines' Motion for Leave to File an Amended Complaint According to Rule 15(a)(2), (ECF No. 164), be **DENIED**.

3. This matter be **DISMISSED WITH PREJUDICE**.

[Signature on following page.]

---

[4] Hines appears to allege physical manifestations of psychological harm, but this is insufficient because "physical manifestations of emotional injuries are not 'physical injuries' for purposes of the PLRA." *Singh v. Mental Health Dep't of Attica Corr. Facility*, 2008 WL 4371777, at *4 (N.D.N.Y. Sept. 18, 2006) (collecting cases).

Date: December 20, 2018                    *s/ Steven E. Rau*
                                           Steven E. Rau
                                           United States Magistrate Judge
                                           District of Minnesota

                                           *Hines v. Smith, et al.*
                                           Case No. 16-cv-3797 (DSD/SER)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).